UNITED STATES of America, Appellee,

v.

Harold William BAUGUS, Appellant.

No. 84–1992.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 15, 1985.

Decided May 10, 1985.

Rehearing Denied June 18, 1985.

F.M. Thomas, Jr., El Dorado, Ark., for appellant.

Steven N. Snyder, Fort Smith, Ark., for appellee.

Before HEANEY, ROSS and McMILLI-AN, Circuit Judges.

McMILLIAN, Circuit Judge.

Harold William Baugus appeals from a final judgment entered in the District Court[1] for the Western District of Arkansas on a jury verdict finding him guilty of making false declarations in violation of 18 U.S.C. § 1623 (1982). Appellant was sentenced to one year in prison. For reversal appellant argues that this prosecution for perjury, following an acquittal on the charge of using the mail to file a false insurance claim, violated his rights under the double jeopardy clause of the fifth amendment. For the reasons discussed below, we affirm.

Appellant originally was tried in September 1983 for mail fraud. The government alleged that appellant sold his 1977 White Freightliner truck to Gilbert Olmstead for $5,500, reported the truck stolen, and then filed a false insurance claim with Sentry Insurance Co. of Wisconsin. The main witnesses for the government were Gilbert Olmstead and his son Mark. Gilbert Olmstead testified that he had agreed with

1. The Honorable Oren Harris, United States Senior District Judge for the Eastern and West-ern Districts of Arkansas.

appellant to purchase appellant's truck. Mark Olmstead testified that appellant delivered a 1977 White Freightliner truck to him in Tulsa, Oklahoma, on July 19, 1981, and that appellant told him that this was the truck that his father (Gilbert Olmstead) was buying from appellant.

Appellant denied driving the truck to Tulsa on July 19 as Mark Olmstead had testified. Appellant testified to the following sequence of events concerning the stolen truck. Appellant drove the truck to Little Rock, Arkansas, the day before he reported it stolen and parked the truck in a no parking zone at the Mid State Truck Plaza. Appellant advised Brian Patton, the manager of the truck stop on duty at that time, that he would remove the truck as soon as a parking space on the lot was available. Appellant then rented a room across the street from the truck stop and did not return to the truck stop to move his truck. The following morning he discovered his truck was missing. Thinking the truck stop manager had towed his truck away, appellant asked Ralph Meyers, the day manager at the truck stop, to call Patton. After the telephone call to Patton revealed that the truck had not been towed, appellant filed a theft report with the Pulaski County Sheriff's Department.

Brian Patton testified for appellant as an alibi witness. Patton confirmed appellant's story about meeting him on the parking lot at the truck stop and receiving a telephone call the next morning from his boss, Ralph Meyers, making inquiry about appellant's truck.

Subsequent to appellant's acquittal on the mail fraud charge, the government brought charges against appellant and Patton for making a false and material statement and aiding and abetting in making a false and material statement in violation of 18 U.S.C. §§ 1623 and 2. The indictment alleged that appellant and Patton testified falsely in two respects: first, that they met at the Mid State Truck Plaza on July 20, 1981, and second, that Ralph Meyers, the day manager of the truck plaza, called Pat-

ton on July 21, 1981, to inquire concerning the whereabouts of appellant's truck.

The government called Mark Olmstead as its first witness in the perjury trial. Olmstead testified that appellant delivered a 1977 White Freightliner truck to him in Tulsa, Oklahoma, on July 19, 1981. Wanda Lewis, bookkeeper and office manager for the Mid State Truck Plaza, and Ralph Meyers also testified. Shift report records for the truck stop established that Patton was not at work on July 20, 1981, as Patton had testified at the mail fraud trial. Meyers testified that it was his responsibility to run the Mid State Truck Plaza during July 1981. Meyers further testified that he had never made a call to Patton concerning a stolen truck. FBI special agent Paul Maxwell testified during the perjury trial that Patton stated to him prior to the perjury trial that his testimony at the mail fraud trial was not based on his actual knowledge of what had occurred but was based upon information given to him. Patton testified at the perjury trial that appellant's attorney approached him on the day of the mail fraud trial with a July 1981 calendar and pointed to the calendar and said, "this is when it happened."

The district court, in overruling appellant's motion for a judgment of acquittal, held that the testimony presented by the government in the perjury trial was entirely different from the testimony in the mail fraud trial and that the testimony of Mark Olmstead was presented to prove the materiality of appellant's and Patton's statements. Further, the district court stated that the jury had been admonished at the beginning of the case that "you are not to consider the mail fraud trial at all ... [the mail fraud trial] has been tried and concluded, and is not to be considered ... in connection with these charges [perjury]."

Appellant was found not guilty of the charge of aiding and abetting but guilty of making a false and material declaration. He was sentenced to one year imprisonment. Execution of the sentence was stayed pending this appeal.

Citing *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and *Unit-*

ed States v. Brown, 547 F.2d 438 (8th Cir.), cert. denied, 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977), appellant argues that the district court erred in denying his motion for judgment of acquittal because the doctrine of collateral estoppel barred the government from arguing or introducing any evidence at the perjury trial which would contradict those findings of fact which the jury made in the mail fraud case. Appellant argues that because he was acquitted of mail fraud, the jury chose to believe that his truck was in Protho Junction, Arkansas, on July 20, 1981, and that appellant did not participate in the theft of the truck. Appellant further argues that the district court should have excluded references in the opening statement, testimony of witnesses and argument by the government which were inconsistent with the facts as found by the jury in the mail fraud case.

The government argues that the perjury indictment and conviction arose from the alibi defense presented at the mail fraud trial and had no bearing on whether or not appellant had entered into a scheme to defraud his insurance company or whether his truck was in fact stolen and that the alibi evidence was therefore a collateral matter in the mail fraud trial. The government further argues that the burden is on the defendant to show that the jury's verdict in the prior trial necessarily decided the issues raised in the second prosecution. See, e.g., United States v. Gugliaro, 501 F.2d 68, 70 (2d Cir.1974). Further, the government argues the jury could have reached its general verdict of acquittal for any of a number of possible reasons and did not necessarily determine the facts which appellant alleges were determined in the first trial.

Collateral estoppel is part of the fifth amendment guarantee against double jeopardy. Ashe v. Swenson, 397 U.S. at 445, 90 S.Ct. at 1195; United States v. Brown, 547 F.2d at 441. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same

parties in any future lawsuit." Ashe v. Swenson, 397 U.S. at 443, 90 S.Ct. at 1194. Collateral estoppel precludes a second prosecution for the second and distinct crime of perjury if the prosecution for perjury would require relitigation of specific fact issues which have already been judicially determined. See, e.g., Adams v. United States, 287 F.2d 701, 703 (5th Cir.1961). "However, the burden [of proof] is upon the defendant to show that the jury's verdict in the prior trial necessarily decided the issues raised in the second prosecution." United States v. Gugliaro, 501 F.2d at 68–70. "It is, of course, difficult in most cases to ascertain from a jury's general verdict exactly what facts were necessarily found as a predicate to that verdict." United States v. Brown, 542 F.2d at 441; see United States v. Gugliaro, 501 F.2d at 70. The reviewing court must " 'examine the record of a prior proceeding, taking into account the pleading, evidence, charge and other relevant matters, and conclude whether a rational jury could have grounded its verdict on an issue other than that which a defendant seeks to foreclose from consideration.' " United States v. Brown, 547 F.2d at 441, citing Ashe v. Swenson, 397 U.S. at 444, 90 S.Ct. at 1194 (citations omitted).

The precise problem, therefore, is to determine exactly what facts have been or should be deemed to have been determined by the jury which acquitted appellant of the mail fraud charge and to determine if any of these facts were litigated in the perjury trial. The perjury indictment alleged that appellant and Patton testified falsely in two respects: first, that they met at the Mid State Truck Plaza on July 20, 1981, and second, that Ralph Meyers, the day manager of the truck plaza, called Patton to inquire concerning the whereabouts of appellant's truck on July 21, 1981. Appellant argues that the jury must have believed his testimony in the mail fraud trial and for that reason the government cannot now attempt to prove that his testimony about the meeting with Patton and the call to Patton by Meyers was false.

What the jury necessarily found was that appellant was not guilty of mail

fraud, that is, he either did not devise a scheme to defraud as alleged by the government, or if he devised a scheme to defraud, he did not use the mails, or if he did devise a scheme to defraud and did use the mails in furtherance of the scheme, he did not use the mails with the specific intent to carry out an essential step in the execution of the scheme. The jury did not necessarily decide that appellant was telling the truth about his meeting with Patton at the truck stop or about Meyers calling Patton about the location of the missing truck. The jury could have decided that appellant was not guilty of mail fraud for reasons that have little or nothing to do with whether appellant truthfully testified about meeting with Patton or about Meyers calling Patton. We therefore hold that the jury's verdict of acquittal in the prior mail fraud trial did not necessarily decide the issues raised in the subsequent perjury prosecution and thus the perjury prosecution was not barred by the collateral estoppel rule of the double jeopardy clause.

Accordingly, the judgment of the district court is affirmed.