UNITED STATES of America, Appellant,

v.

Lonson Jaa LULOFF, Appellee.

UNITED STATES of America, Appellant,

v.

Lonson Jaa LULOFF, Appellee.

UNITED STATES of America, Appellee,

v.

Lonson Jaa LULOFF, Appellant.

Nos. 93–2010, 93–2991 and 93–3052.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1993.

Decided Feb. 2, 1994.

---

Counsel who presented argument on behalf of the appellant/cross-appellee United States was Robert Erickson of Washington, DC. The names of Ronald M. Kayser, Christopher D. Hagen and Joel M. Gershowitz of Washington, DC, appear on the brief of the appellant/cross-appellee.

Counsel who presented argument on behalf of the appellee/cross-appellant Lonson Jaa Luloff was William Kutmus of Des Moines, Iowa.

Before FAGG and WOLLMAN, Circuit Judges, and WRIGHT,* District Judge.

WOLLMAN, Circuit Judge.

In this consolidated appeal, we consider the scope of an informal immunity agreement. A federal grand jury indicted Lonson Jaa Luloff for drug offenses and a firearm offense. The district court dismissed the indictment and suppressed evidence seized during a search of Luloff's residence. The government appeals from both orders. After the district court dismissed the indictment, a different grand jury indicted Luloff for additional drug offenses. The district court once again granted Luloff's motion to suppress evidence, but denied his motion to dismiss the second indictment. The government appeals from the order suppressing evidence, and Luloff cross appeals from the order refusing to dismiss the indictment. We reverse and remand for further proceedings.

## I.

On August 15, 1991, Luloff entered into an informal immunity agreement with the United States Attorney's Office for the Northern District of Iowa. The agreement, the terms of which were contained in a letter, provided that

the United States Attorney's Office for the Northern District of Iowa agrees to grant you informal use immunity as to information and testimony concerning your knowledge and participation in controlled substances trafficking prior to June 24, 1987, which you may provide to government attorneys, investigating agents assisting our office, in any court proceeding in which you have been subpoenaed to testify at the request of our office, or to the federal grand jury for the Northern District of Iowa.

The agreement granted Luloff immunity only for drug offenses in violation of Title 21 of

* The HONORABLE SUSAN WEBBER WRIGHT, United States District Judge for the Eastern District of Arkansas, sitting by designation.

the United States Code. Moreover, the agreement explicitly provided that it "would not bar the government from using information provided by [Luloff] in a subsequent prosecution against [him] for crimes or acts occurring after the date of th[e] [agreement]."

On the same day that Luloff entered into the agreement, he testified before a grand jury investigating drug trafficking by Steve and Deb Jelinek. After Luloff testified, the grand jury indicted the Jelineks.

On January 13, 1993, Special Agent Jerry Nelson of the Iowa Division of Narcotics obtained a warrant to search Luloff's residence for drugs, firearms, cash, and other items relating to drug trafficking. The warrant was executed the next day, and the investigating officers seized a small quantity of marijuana, a shotgun, $218,000 in cash, drug paraphernalia, documentary evidence, and six vehicles. On January 21, 1993, a grand jury returned a five-count indictment against Luloff. Count One charged him with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848; Count Two charged him with conspiring to distribute methamphetamine, in violation of 21 U.S.C. § 846; Count Three charged him with attempting to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. § 846; Count Four charged him with distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and Count Five charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

Following an evidentiary hearing, the district court entered an order on April 16, 1993, granting Luloff's motion to suppress the evidence seized during the search of his residence and his motion to dismiss the indictment, from which the government appealed (No. 93–2010).

On April 21, 1993, another grand jury returned a five-count indictment against Luloff. Count One, charging him with attempting to possess methamphetamine with intent to distribute on January 18, 1992, was identical to Count Three of the earlier indictment, but Counts Two through Five, charging him with distributing methamphetamine during 1992 and 1993, were new. Luloff filed motions to suppress the evidence seized from his residence and to dismiss the indictment. The district court granted Luloff's motion to suppress, but denied his motion to dismiss. The government appeals from the district court's grant of the motion to suppress (No. 93–2991), and Luloff cross appeals from the denial of the motion to dismiss (No. 93–3052).

## II.

### A. Indictment

The district court dismissed the first indictment because it found that the government had failed to prove that any count in the indictment rested on a legitimate source wholly independent of Luloff's immunized testimony. The government argues that the district court ignored the plain language of the immunity agreement, which expressly permitted the government to use Luloff's immunized testimony to prosecute him for crimes committed after the date of the agreement.[1]

A witness who asserts his Fifth Amendment privilege against self-incrimination may be compelled to testify if he is granted statutory immunity. Statutory immunity prohibits the government from using any "testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) … against the witness in any criminal case." 18 U.S.C. § 6002. Statutory immunity, however, does not completely insulate an individual from prosecution. The government may prosecute a witness who has been granted statutory immunity if the government proves "that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1664, 32 L.Ed.2d 212 (1972).

---

1. Luloff's contention that we should not consider the government's argument because it was not raised in the district court is without merit. In its response to Luloff's motion to dismiss the indictment, the government presented the same argument that it raises on appeal.

Luloff, however, never asserted his Fifth Amendment privilege against self-incrimination. He entered into an informal immunity agreement with the government. While the statute determines the scope of statutory immunity, the scope of informal immunity is governed by the terms of the immunity agreement. *See, e.g., United States v. Harvey,* 900 F.2d 1253, 1257 (8th Cir.1990), *cert. denied,* 498 U.S. 1047, 111 S.Ct. 754, 112 L.Ed.2d 774 (1991). The terms of Luloff's immunity agreement specifically permitted the government to use information that Luloff provided to prosecute him for crimes occurring after the date of the agreement. Each of the crimes charged in Counts Three, Four, and Five of the indictment occurred in its entirety after August 15, 1991, the date of the agreement.[2] Count Three arose from Luloff's attempt to purchase methamphetamine on January 18, 1992. Count Four arose from Luloff's distribution of a methamphetamine to a confidential informant on January 11, 1993. Count Five charged Luloff, a previously convicted felon, with unlawfully possessing a firearm, which was discovered during the search of his residence on January 14, 1993. Regardless of when Luloff acquired the firearm, the agreement, which was specifically limited to Title 21 drug offenses, clearly did not bar the government from prosecuting Luloff for possessing a firearm.

Informal immunity agreements are contractual in nature and are governed by ordinary standards of contract law. *See, e.g., United States v. Johnson,* 861 F.2d 510, 512 (8th Cir.1988); *United States v. Liranzo,* 944 F.2d 73, 77 (2d Cir.1991); *United States v. Irvine,* 756 F.2d 708, 710–11 (9th Cir.1985). Thus, the terms of an unambiguous informal immunity agreement should be enforced. *United States v. Weaver,* 905 F.2d 1466, 1472 (11th Cir.1990), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991). We find no ambiguity in Luloff's immunity agreement.[3] The agreement specifically allowed the government to use the information that Luloff provided to prosecute him for the crimes charged in Counts Three, Four, and Five of the indictment. Accordingly, by requiring the government to prove that the indictment did not rest on evidence derived from Luloff's immunized testimony, the district court failed to enforce the terms of the agreement.

Luloff's reliance on *United States v. Harvey,* 900 F.2d 1253 (8th Cir.1990), *cert. denied,* 498 U.S. 1047, 111 S.Ct. 754, 112 L.Ed.2d 774 (1991), is misplaced. We remanded that case for an evidentiary hearing with the instruction that, "If Harvey claims that an offer of evidence ... violates his use immunity, then the government may introduce that evidence ... only if it proves that it was 'derived from a legitimate source wholly independent' of the testimony given under the grant of immunity." *Id.* at 1258 (citations omitted). In contrast to Luloff's agreement, however, Harvey's agreement did not contain a provision specifically permitting the government to use against him the information that he provided under a grant of immunity. The government is not required to prove that charges are based on evidence derived from a legitimate source wholly independent of immunized testimony if the scope of the grant of informal immunity does not encompass the crimes with which the defendant is charged. *United States v. Wiley,* 997 F.2d 378, 382 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993). Accordingly, we reverse the dismissal of Counts Four and Five of the first indictment. Because Count Three of the first indictment is identical to Count One of the second indictment, the dismissal of Count Three was harmless error.

---

2. In its brief, the government explained that it does not appeal the district court's dismissal of Counts One and Two because part of those offenses occurred prior to August 15, 1991.

3. Luloff contends that the agreement is ambiguous because the first paragraph grants him immunity concerning his knowledge and participation in drug trafficking prior to June 24, 1987, while the second paragraph permits the government to use information that Luloff provided to prosecute him for crimes occurring after the date of the agreement. Because all of the crimes that are at issue in this appeal were allegedly committed after August 15, 1991, the date of the agreement, we need not consider whether the agreement is ambiguous concerning crimes that Luloff may have committed between June 24, 1987 and August 15, 1991.

## B. Suppression

Luloff filed motions to suppress evidence seized during the search of his residence. The district court granted both motions. The affidavit supporting the warrant application contained information provided by Deb Jelinek, her brother-in-law Tom Jelinek, and two confidential informants. The district court did not consider the information provided by the Jelineks concerning various drug transactions with Luloff, concluding that the information was stale. The district court also refused to consider the information provided by confidential informants because it was tainted by Luloff's immunized testimony. After striking the information that it had determined was stale and tainted, the district court concluded that the warrant application did not contain sufficient information to establish probable cause to search Luloff's residence.

█ While we review the grant of a motion to suppress for clear error, *United States v. Wold,* 979 F.2d 632, 634 (8th Cir. 1992), we will reverse the district court's ruling if it reflects an erroneous view of the applicable law. *United States v. Marshall,* 986 F.2d 1171, 1173 (8th Cir.1993).

We first consider the district court's refusal to consider the information provided by the confidential informants. As a result of Luloff's immunized grand jury testimony, Deb Jelinek was indicted. Pursuant to a plea agreement, she provided information that led to confidential informant number one, who, in turn, provided information leading to confidential informant number two. The district court concluded, therefore, that Luloff's immunized testimony led to the evidence provided by the confidential informants. Luloff's immunity agreement, however, expressly permitted the government to use information that Luloff provided to prosecute him for crimes committed after the date of the agreement. The agreement, therefore, did not bar the government from using information derived from Luloff's testimony to obtain a warrant to search for evidence of crimes committed after the date of the agreement. Because both indictments charged Luloff with crimes committed after August 15, 1991, the date of the agreement, the district court's refusal to consider the information provided by the confidential informants was erroneous.

We turn now to the district court's refusal to consider the information provided by the Jelineks. The affidavit supporting the January 1993 warrant application stated that Deb Jelinek, prior to January 18, 1992, had witnessed Luloff regularly engage in drug transactions with her husband, Steve Jelinek. Additionally, the affidavit stated that Tom Jelinek had informed Agent Nelson that Luloff had attempted to purchase $500,000 of methamphetamine on January 18, 1992.

█ Standing alone, the information from the Jelineks concerning drug transactions that had occurred more than one year before Agent Nelson applied for the warrant to search Luloff's residence was insufficient to establish probable cause. An affidavit supporting a warrant application, however, should not be assessed "paragraph by paragraph; it must be evaluated as a whole." *United States v. Anderson,* 933 F.2d 612, 614 (8th Cir.1991). The information provided by the confidential informants updated the Jelineks' information by showing that Luloff continued to engage in drug trafficking from January 1992 until the time of the search in January 1993. Thus, because the affidavit, considered in its entirety, showed continuous, ongoing criminal activity, the information in the January 1993 warrant application concerning Luloff's participation in drug trafficking prior to January 18, 1992 was not stale. *United States v. Rugh,* 968 F.2d 750, 754 (8th Cir.1992); *United States v. Hernandez–Escarsega,* 886 F.2d 1560, 1566 (9th Cir. 1989), *cert. denied,* 497 U.S. 1003, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990). "It is well-settled that information about criminal activity at an earlier, unspecified time may combine with factually connected, recent, time-specific information to provide a substantial basis for the conclusion that the criminal activity described in an affidavit is sufficiently close in time to the search warrant application." *United States v. Day,* 949 F.2d 973, 978 (8th Cir.1991). Accordingly, we find that the district court should have considered the information provided by the Jelineks.

768

During oral argument, Luloff conceded that the information provided by the Jelineks, along with the information from the confidential informants, was sufficient to establish probable cause. According to the affidavit, the confidential informants provided the following information. During 1992, Luloff distributed methamphetamine, directly and indirectly, to the confidential informants. On January 13, 1993, the day before officers searched Luloff's residence, law enforcement officers approached confidential informant number two and asked him to cooperate. He agreed, and informed Agent Nelson that, in exchange for $100,000, Luloff had supplied him with methamphetamine weekly for a year, the most recent delivery taking place two days earlier at the informant's residence. He stated further that Luloff kept shotguns and large amounts of money at his residence. Telephone toll records corroborated the confidential informant's information, showing that Luloff had made telephone calls to confidential informant number two's residence. Additionally, the confidential informant was carrying Luloff's business card when officers approached him.

The information in the affidavit showing that Luloff had engaged in a continuous course of drug trafficking beginning several years prior to January 18, 1992, along with Agent Nelson's averment based upon his experience that drug traffickers often keep in their residences records of their illicit activity, large amounts of cash, assets purchased with the proceeds of drug transactions, and guns to protect their drugs and cash, provided the issuing judge with a substantial basis for finding probable cause to search Luloff's residence. *See United States v. Martin,* 866 F.2d 972, 976 (8th Cir.1989) (stating that a reviewing court "need only ensure that the issuing official had a substantial basis to conclude that probable cause existed.") (citing *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)); *see also United States v. Williams,* 974 F.2d 480, 481–82 (4th Cir.1992) (finding probable cause to search motel room for drug para-phernalia based upon affidavit establishing that defendant was a drug dealer and residing in motel room); *United States v. Benevento,* 836 F.2d 60, 70–71 (2d Cir.1987) (finding opinion of experienced narcotics agent that drug traffickers often keep records and cash in their homes an important factor in probable cause determination), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988); *United States v. Fannin,* 817 F.2d 1379, 1381–82 (9th Cir.1987) (same); *United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986) (stating that evidence is likely to be found where drug dealers live). Accordingly, we reverse the district court's grant of Luloff's motions to suppress.

## III.

Luloff cross appeals from the district court's order denying his motion to dismiss the second indictment on the ground that it is tainted by his immunized testimony. We have no jurisdiction to consider Luloff's cross appeal. The district court's order denying Luloff's motion is not a final appealable decision under 28 U.S.C. § 1291. A criminal case does not become final until after the defendant is convicted and sentenced, *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989), and Luloff has not yet been tried. Moreover, denial of a motion to dismiss an indictment on the ground that it is tainted by immunized testimony does not fall within the collateral order exception of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).[4] *See United States v. Poindexter,* 859 F.2d 216, 218 (D.C.Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989); *United States v. Dederich,* 825 F.2d 1317, 1321 (9th Cir.1987); *United States v. Bird,* 709 F.2d 388, 392 (5th Cir.1983).

We reverse the orders dismissing Counts Four and Five of the first indictment and suppressing evidence derived from the search of Luloff's residence, dismiss Luloff's

---

4. The Second Circuit does permit an interlocutory appeal of an order denying a colorable motion to dismiss an indictment for violation of a plea agreement. *See, e.g., United States v. Romero,* 967 F.2d 63, 65 (2d Cir.1992); *United States v. Abbamonte,* 759 F.2d 1065, 1071 (2d Cir.1985).

cross appeal for lack of jurisdiction, and remand the cases for further proceedings.