**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Christopher J. BAILEY, Defendant–
Appellant.**

**No. 93–4115.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1994.

Decided Sept. 8, 1994.

Bruce Houdek, Kansas City, MO, argued, for defendant-appellant.

Christina Tabor, Kansas City, MO, argued, for plaintiff-appellee.

Before FAGG, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges. .

HANSEN, Circuit Judge.

Christopher J. Bailey is charged in a two-count indictment with making false material representations to, and concealing material facts from, the United States Customs Service, Department of the Treasury of the United States, in violation of 18 U.S.C. § 1001 (1988). In this appeal, Bailey challenges the district court's[1] order denying his motions to dismiss the pending indictment. Bailey argues that he is entitled to dismissal of the indictment on the grounds of double jeopardy and collateral estoppel and on the ground that the indictment contravenes the terms of his immunity agreement. We dismiss the appeal for lack of jurisdiction.

## I. Background

In January 1989, the United States Customs Service conducted an investigation resulting in the indictment of David Hairabedian and four other individuals on charges of conspiracy to steal an airplane in the Kansas City, Missouri, area. This investigation led to a second investigation involving the distribution of large amounts of cocaine and the theft of an airplane from a Fort Lauderdale, Florida, airport in December 1988, involving several of the same individuals.

Bailey's attorney contacted the government on his behalf and indicated that Bailey was willing to cooperate in the investigation of the December 1988 Florida airplane theft in exchange for statutory immunity. The government instead offered Bailey a letter which set forth an informal promise not to prosecute in exchange for Bailey's cooperation. On May 31, 1989, in accordance with the agreement, Bailey spoke with Special Agent James Cheatham of the United States Customs Service. Bailey provided Agent Cheatham with details of the December 1988

airplane theft, including the sale of that airplane to drug dealers for $50,000 cash and 16 kilograms of cocaine. Bailey admitted that he received $5,000 from the transaction and that he burned 10 of the 16 kilograms of cocaine in a barrel. As the investigation progressed, this admission became suspect. At one point, Bailey admitted that he had lied to Agent Cheatham about the disposal of some of the cocaine involved, but the government chose not to revoke the nonprosecution agreement. Later, as discussed below, Bailey's statement about the amount of money that he allegedly received also became suspect.

While Hairabedian was on bond pending trial of the Kansas City conspiracy, Bailey cooperated with the Customs Service in an undercover narcotics operation targeting Hairabedian. As a result, the government moved to revoke Hairabedian's pretrial release. At the revocation hearing on July 31, 1989, Bailey testified, in part, that he received $5,000 from the December 1988 airplane theft and drug deal.. Following the hearing, the district court revoked Hairabedian's bond.

After receiving a tip in February 1990 from the Bureau of Alcohol, Tobacco and Firearms (ATF) in Tulsa, Oklahoma, Agent Cheatham began to doubt the veracity of Bailey's statement that he received only $5,000 from the December 1988 Florida airplane theft and drug deal. The ATF informant, William Evan Crocker, provided information that Bailey had recently paid almost $20,000 cash to purchase a helicopter. This aroused Agent Cheatham's suspicions because Bailey claimed to be impoverished. Agent Cheatham subsequently questioned Bailey about his financial situation in an effort to assess his credibility, and Bailey assured him that he had received approximately $18,000 cash from working for Crocker. Agent Cheatham asked Bailey to corroborate this statement and then asked Crocker for his cooperation. Crocker later provided Agent Cheatham with a tape-recorded tele-

1. The Honorable Howard F. Sachs, Senior United States District Judge for the Western District of Missouri, adopting the reports and recommendations of the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

phone conversation in which Bailey asked him to sign a false wage statement in the amount of $18,000 cash. Bailey also admitted on the tape that he had stolen $20,000 from a deal, unknown to the Customs Service.

In May 1992, a grand jury indictment charged Bailey with making a false declaration under oath at Hairabedian's bond hearing, in violation of 18 U.S.C. § 1623, by stating that he received $5,000 from the stolen airplane and drug deal in December 1988, when in fact the amount he received was much greater. The district court[2] held a pretrial hearing on the government's motion to determine whether the statement satisfied the materiality element of section 1623.[3] The district court initially concluded that the statement was material but on reconsideration determined that it was not a material misstatement in the limited context of Hairabedian's bond hearing. Consequently, the district court dismissed the indictment on Bailey's motion.

After more investigation into the matter, Agent Cheatham concluded that Bailey had received more than $40,000 from the December 1988 Florida airplane theft and related drug deal. On May 12, 1993, a federal grand jury returned the presently pending two-count indictment charging Bailey with two violations of 18 U.S.C. § 1001.[4] Count one alleges that Bailey falsely represented to the Customs Service that he received $5,000 from the Florida airplane and drug deal in December 1988. Count two alleges that Bailey concealed and covered up the material fact that he received at least $36,000 of the $50,000 cash proceeds from the sale of the stolen airplane.

Bailey moved to dismiss the instant indictment on the grounds of double jeopardy.

Bailey argued (1) that the offenses of the current indictment are lesser included offenses of the charge in the earlier dismissed indictment, and (2) that under the earlier indictment, the district court determined the materiality issue (materiality being also an issue in the instant indictment), and therefore the government is collaterally estopped from relitigating that issue. Bailey filed a second motion to dismiss the indictment and to prohibit the use of immunized statements against him on the ground that the pending indictment violates the nonprosecution agreement.

By reports and recommendations, the magistrate judge advised the district court to deny both of Bailey's motions to dismiss. The district court adopted the reports and recommendations, concluding that Bailey was attempting to stretch the immunity agreement beyond its reasonable intent and that neither double jeopardy nor collateral estoppel bar the prosecution under section 1001. (Dist.Ct. Order, Dec. 2, 1993.) Bailey appeals the district court's order denying his motions to dismiss.

## II. Double Jeopardy

Bailey first claims that the pending charges under 18 U.S.C. § 1001 violate the Double Jeopardy Clause because section 1001 is a lesser included offense of 18 U.S.C. § 1623, the charge contained in the earlier dismissed indictment. We do not address the lesser included offense argument because we conclude that we lack jurisdiction.

This court has jurisdiction under 28 U.S.C. § 1291 (1988) to review the denial of a motion to dismiss on double jeopardy grounds. See Abney v. United States, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977) (holding pretrial orders rejecting claims of former jeopardy consti-

---

2. The Honorable Howard F. Sachs, Senior United States District Judge for the Western District of Missouri.

3. The government must prove the following elements to gain a conviction under 18 U.S.C. § 1623: that the defendant (1) while under oath, and (2) testifying in a proceeding before a court of the United States, (3) knowingly made, (4) a false statement, and (5) the testimony was material to the proof of the crime alleged in that

proceeding. United States v. Sablosky, 810 F.2d 167, 169 (8th Cir.), cert. denied, 484 U.S. 833, 108 S.Ct. 109, 98 L.Ed.2d 68 (1987).

4. Title 18, U.S.C. § 1001 makes it unlawful to knowingly and willfully falsify, conceal or cover up a material fact, or to make any false statements or representations in any matter within the jurisdiction of any department or agency of the United States.

tute "final decisions" under 28 U.S.C. § 1291 by reason of the collateral order exception to finality); *see also United States v. Allen,* 984 F.2d 940, 941 (8th Cir.1993). However, such an order is immediately appealable only if the defendant makes a showing of a *colorable* double jeopardy claim. *United States v. Grabinski,* 674 F.2d 677, 678 (8th Cir.) (en banc) (per curiam) (emphasis added), *cert. denied,* 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 67 (1982). If the defendant has failed to state a colorable double jeopardy claim, we will dismiss the double jeopardy appeal for lack of jurisdiction. *United States v. Bernard Ivory,* 29 F.3d 1307, 1310 (8th Cir.1994) (citing *Grabinski,* 674 F.2d at 680). We must determine whether the defendant has stated a colorable double jeopardy claim.

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars a second prosecution for the same offense or a lesser included offense. *Brown v. Ohio,* 432 U.S. 161, 168–69, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977). Jeopardy attaches to a prosecution when the jury is empaneled and sworn or, in a nonjury case, when the court begins to hear evidence. *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062–63, 43 L.Ed.2d 265 (1975); *see also United States v. Miller,* 995 F.2d 865, 868 (8th Cir.1993). "Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.'" *Serfass v. United States,* 420 U.S. 377, 391, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265 (1975) (quoting *Kepner v. United States,* 195 U.S. 100, 133, 24 S.Ct. 797, 806, 49 L.Ed. 114 (1904)). "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Id.* 420 U.S. at 391–92, 95 S.Ct. at 1064. Where the record clearly shows that jeopardy had not attached when the first indictment was dismissed, the defendant has failed to state a colorable double jeopardy claim. *Grabinski,* 674 F.2d at 680.

At the materiality hearing under the first indictment, the district court heard testimony from sworn witnesses, but there was no risk of a determination of guilt. We addressed a similar situation in *United States v. Lasater,* 535 F.2d 1041 (8th Cir.1976). Lasater was charged with violating 18 U.S.C. § 1623, *id.* at 1043, and the district court held a pretrial hearing on the issue of whether the allegedly perjured statements were material to the proceeding at which they were uttered, an essential element of the offense. *Id.* at 1046. At the hearing, the court received "[c]onsiderable documentary evidence" as well as testimony of witnesses on the materiality issue and then determined that the government failed to establish that the statement was material. *Id.* The district court entered a judgment of acquittal, and the government appealed. *Id.* Lasater argued that double jeopardy barred the appeal because the district court acquitted him of the charges. *Id.* at 1046–47. This court concluded that the district court's order was not an acquittal but a pretrial determination of a question of law. *Id.* at 1047. Jeopardy had not attached because the district court "was without power to enter a judgment of conviction" in such a pretrial proceeding. *Id.* "Guilt could be found only by the jury, which was to hear the issues of falsity and knowledge. And, as the Court noted in *Serfass,* without a risk of determination of guilt there can be no attachment of jeopardy." *Id.*

Following *Lasater,* we conclude that, although the district court received evidence and testimony at the materiality hearing, jeopardy did not attach under the first indictment because the court was deciding a question of law and did not have the authority to determine guilt or innocence at that time. We decline to reach Bailey's lesser included offense argument, because even if section 1001 were a lesser included offense of section 1623, double jeopardy would not bar the pending indictment since jeopardy never attached to the first indictment.

■ Bailey also argues that the doctrine of collateral estoppel bars the current indictment. Bailey contends that in the first indictment, charging a violation of section 1623, the district court made a factual determination that the statement at issue was not "material" and that the government is now barred from relitigating that issue, which is

also an essential element of the pending section 1001 charges.

■ The doctrine of collateral estoppel is "embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970), *see also United States v. Dixon*, — U.S. —, —, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993) (collateral estoppel "may bar a later prosecution for a separate offense where the Government has *lost* an earlier prosecution involving the same facts."). The doctrine of collateral estoppel provides that " 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *United States v. Baugus*, 761 F.2d 506, 508 (8th Cir.1985) (quoting *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194). This doctrine "precludes a second prosecution for the second and distinct crime of perjury if the prosecution for perjury would require relitigation of specific fact issues which have already been judicially determined." *Id.* The defendant has the burden to demonstrate that under the prior indictment, the court or a jury necessarily decided the issue of fact which is an element at issue in the present indictment. *Id.*

The first indictment charged Bailey with perjury in violation of section 1623 based upon his testimony at Hairabedian's bond hearing which included Bailey's testimonial statement that he had received $5,000 from the December 1988 Florida airplane and drug deal, when in fact the amount might have been greater. The district court determined as a matter of law that this "alleged false statement under oath was not 'material,' as the term is understood in this context." (Appellant's App. at 12, 14.) The district court also stated that "[w]hether there are grounds for prosecution based on the allegedly false statement to the agent is not resolved." (*Id.* at 13.) In the present indictment, Bailey is charged with making false material representations to the United States Customs agent during the course of several investigations, in violation of section 1001, based upon the same allegedly false factual content contained in both his testimony and his statement to the investigator—that he received only $5,000 from the December 1988 Florida airplane and drug deal.

Materiality is an essential element both of section 1623 and of section 1001, but it is ultimately a question of law, *see Lasater*, 535 F.2d at 1047, which will vary with the context of each charge. While there may be situations where a prosecution under section 1001 would be barred by a prior perjury acquittal involving the same facts, this is not such a case because what is immaterial in one setting may be material in another. The pending indictment for making a false statement *to a Customs Service agent* is factually distinguishable from the prior indictment for making a false statement under oath *in a court proceeding*, and the legal question of materiality necessarily varies with each. The current indictment charging violations of section 1001 by statements made to the Customs Service agent is therefore not barred by the prior ruling on materiality under the perjury statute. The doctrine of collateral estoppel simply does not apply to this situation.

Bailey contends that *United States v. Hernandez*, 572 F.2d 218 (9th Cir.1978), supports his collateral estoppel argument that prosecution under section 1001 is barred by a prior perjury dismissal. We disagree. In *Hernandez*, unlike in Bailey's case, jeopardy had attached to the first indictment. 572 F.2d at 219–20. Hernandez had been through a jury trial which ended in deadlock on the section 1001 false statement count; he then moved for a judgment of acquittal which the district court granted. *Id.* at 220. The motion was not for a pretrial determination of a legal question. The district court in *Hernandez* had the power to determine guilt or innocence by the defendant's motion for judgment of acquittal; thus jeopardy attached and the dismissal on the defendant's motion was a factual determination of innocence. *See id.* at 221–22.

Because jeopardy did not attach to the first indictment against Bailey and because no issue of fact has yet been determined in favor of Bailey, we conclude that he has not made a colorable double jeopardy claim. We

therefore dismiss the double jeopardy appeal for lack of jurisdiction.

### III. The Nonprosecution Agreement

■ Bailey also contends that the pending indictment violates his nonprosecution agreement with the government and that immunized statements should not be used against him to form the basis of the pending indictment.

■ Again, we must first consider whether we have jurisdiction to adjudicate this claim. Federal courts of appeals "have jurisdiction of appeals from all final decisions of the district courts...." 28 U.S.C. § 1291. In a criminal case, this rule prohibits appellate review until after conviction and sentencing, *Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 1053–54, 79 L.Ed.2d 288 (1984); *United States v. Luloff*, 15 F.3d 763, 768 (8th Cir.1994), except in a few limited situations. Although we have jurisdiction to review an order denying dismissal of an indictment on a colorable double jeopardy claim, other claims contained in the motion to dismiss are immediately appealable "if, and only if, they too fall within *Cohen's* collateral-order exception to the final-judgment rule." *Abney*, 431 U.S. at 663, 97 S.Ct. at 2042 (referring to *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949)). *Cohen's* collateral order exception permits immediate appeal of a pretrial order if (1) the order conclusively determines the disputed question, (2) it resolves an important issue separate from the merits of the action, and (3) "it must 'be effectively unreviewable on appeal from a final judgment.'" *Flanagan*, 465 U.S. at 265, 104 S.Ct. at 1055 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978)). The collateral order exception is applied "with the utmost strictness in criminal cases" in an attempt to avoid piecemeal litigation and to promote prompt trials. *Id.; see also Grabinski*, 674 F.2d at 678. "The importance of the final judgment rule has led the Court to permit departures from the rule only when observance of it would practically defeat the right to any review at all." *Flanagan*, 465 U.S. at 265, 104 S.Ct. at 1054 (internal quotation omitted).

The Supreme Court has applied the collateral order exception to only three types of pretrial orders: (1) an order denying a motion to reduce bail, *see Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951); (2) an order denying a motion to dismiss an indictment on double jeopardy grounds, *see Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); and (3) an order denying a motion to dismiss an indictment on speech or debate grounds, *see Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). *Flanagan*, 465 U.S. at 266–67, 104 S.Ct. at 1055. The Supreme Court has rejected other attempts to immediately appeal a pretrial order denying a motion to dismiss an indictment. *See id.* at 268–70, 104 S.Ct. at 1056–57 (holding an order denying dismissal on grounds of pretrial disqualification of defense counsel is not truly collateral because dependent on prejudice to the defendant); *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 270, 102 S.Ct. 3081, 3085, 73 L.Ed.2d 754 (1982) (holding an order denying dismissal on the grounds of prosecutorial vindictiveness is not immediately appealable because the right will not be lost if not appealed before trial); *United States v. MacDonald*, 435 U.S. 850, 861, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18 (1978) (holding an order denying dismissal on grounds of the Sixth Amendment speedy trial guarantee is not immediately appealable because the right to a speedy trial is not a right not to be tried); *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 32, 63 S.Ct. 938, 944–45, 87 L.Ed. 1185 (1943) (holding a claim of lack of jurisdiction is not immediately appealable); *Heike v. United States*, 217 U.S. 423, 431–33, 30 S.Ct. 539, 542–43, 54 L.Ed. 821 (1910) (holding an order denying dismissal on grounds of statutory immunity is not immediately appealable because it is merely a defense and is not intended to secure a defendant from prosecution). The Court has emphasized that "exceptions to the final judgment rule in criminal cases are rare." *Flanagan*, 465 U.S. at 270, 104 S.Ct. at 1057.

This circuit recently held that the denial of a motion to dismiss on the ground that the indictment is tainted by immunized testimony does not fall within the collateral order

exception. *See Luloff,* 15 F.3d at 768. Neither the Supreme Court nor this circuit, however, has considered whether an informal nonprosecution agreement falls within *Cohen*'s collateral order exception to the rule of finality.

Applying the *Cohen* factors, we conclude that the first two requirements are satisfied in this case. First, the district court's order denying dismissal conclusively determined that the agreement will not prevent trial on the pending indictment. Second, the issue is important because if Bailey were to prevail, the entire prosecution would be halted. Furthermore, the issue is separable from the merits of whether Bailey is guilty or innocent of making a false statement to a government agency. Thus, the first two *Cohen* factors are met.

■ The third inquiry of *Cohen* is the most difficult to satisfy: "It is only a narrow group of claims which meet the test of being 'effectively unreviewable on appeal from a final judgment.'" *Hollywood Motor Car Co.,* 458 U.S. at 270, 102 S.Ct. at 3085. To satisfy this stringent requirement, the right at stake must be one which can be enjoyed only if vindicated prior to trial; namely, "a right not to be tried" as opposed to "a right whose remedy merely requires the dismissal of charges." *Id.* at 269, 102 S.Ct. at 3085. Bailey's nonprosecution letter expresses an agreement "not to prosecute" Bailey "for any of the aforementioned aircraft thefts and related conversations concerning drug transactions" in exchange for Bailey's full and complete cooperation. (Appellant's App. at 2.) The determinative question for this inquiry is whether the agreement's expressed promise "not to prosecute" is a right "not to be tried" or a right which is equally remedied by dismissal after final judgment.

The Second Circuit has held that a nonprosecution agreement is a promise not to be tried, similar to a double jeopardy claim. *See United States v. Romero,* 967 F.2d 63, 65 (2d Cir.1992); *United States v. Alessi,* 536 F.2d 978, 980–81 (2d Cir.1976). However, other circuits that have addressed the issue uniformly hold that an agreement not to prosecute, expressed in a prior plea agreement or cooperation agreement, is in essence a promise not to be punished, which is adequately remedied by a dismissal after final judgment and which is therefore not entitled to immediate appeal. *See United States v. Dederich,* 825 F.2d 1317, 1321 (9th Cir.1987) (state grant of immunity); *John Doe Corp. v. United States,* 714 F.2d 604, 606–07 (6th Cir.1983) (plea agreement); *United States v. Bird,* 709 F.2d 388, 392 (5th Cir.1983) (nonprosecution agreement); *United States v. Brizendine,* 659 F.2d 215, 226 (D.C.Cir.1981) (plea bargain process); *United States v. Eggert,* 624 F.2d 973, 975–76 (10th Cir.1980) (plea bargain); *United States v. Cavin,* 553 F.2d 871, 872–74 (4th Cir.1977) (immunized statements).

■ In *Bird,* the Fifth Circuit held that the essence of a nonprosecution agreement is a promise of immunity, and "immunity from punishment will not be lost simply because [the defendant] is forced to stand trial." 709 F.2d at 392. A grant of immunity generally shields a person from a *successful* prosecution and is available as a defense. *Heike,* 217 U.S. at 431, 30 S.Ct. at 542 (emphasis added). The Fifth Circuit's view of a nonprosecution agreement as, in essence, a promise of immunity is consistent with this circuit's general view. *See United States v. Johnson,* 861 F.2d 510, 512 (8th Cir.1988) ("With an agreement not to prosecute, parties agree that the defendant's cooperation is sufficient consideration for the government's promise of immunity."). We have said that the government in engaging in such an agreement must feel "that the public would be better served by gaining [the] information than by [gaining a] conviction," *id.* at 513, also that the defendant's benefit of the bargain is "avoiding the risk of going to trial." *United States v. McGovern,* 822 F.2d 739, 745 (8th Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 352, 98 L.Ed.2d 377 (1987). "Avoiding the risk of going to trial" is different from "avoiding trial." The "risk" of going to trial is the inherent risk of conviction and punishment as a result of the trial, not the trial itself as in the double jeopardy context.

The government offered Bailey the informal nonprosecution agreement in order to avoid going through the procedure of obtaining statutory immunity. (Appellant's App. at

2.) Bailey contends in his brief that a nonprosecution agreement is enforceable by dismissal (Appellant's Br. at 15) and does not allege that his rights under the agreement will be lost if not remedied before trial. Furthermore, the parties did not brief or argue this jurisdictional issue so although we must address the question of whether we have jurisdiction, we hesitate to create a new collateral order exception *sua sponte* in light of the Supreme Court's clear intent to limit use of the exception. We conclude that the availability of dismissal after final judgment will adequately protect and secure for the defendant the benefit of his bargain under the nonprosecution agreement if he is entitled to it.

The nonprosecution agreement does not meet the third factor of *Cohen* because the right granted in the agreement can be remedied on appeal from a final judgment without being irreparably lost. Therefore, we do not have jurisdiction to consider this claim, and we express no view on its merits.[5]

## IV. Conclusion

We conclude that Bailey has failed to make a colorable claim of double jeopardy and that the district court's order denying Bailey's motion to dismiss on the ground that the indictment violates the nonprosecution agreement is not a final appealable order. Therefore, we dismiss the appeal for lack of jurisdiction.

MORRIS SHEPPARD ARNOLD, Circuit Judge, concurring in the judgment.

I agree entirely with that portion of the court's opinion that deals with the question of double jeopardy. I am, however, of the view that we have jurisdiction to reach the question of whether the nonprosecution agreement has been breached because that question is "effectively unreviewable on appeal from a final judgment." The agreement specifically promises appellant "not to prosecute" him under certain circumstances. The right that it creates is a right of immunity from trial, and is thus lost if a decision on whether it has been violated has to wait until after the trial. I agree with the reasoning in *United States v. Romero*, 967 F.2d 63 (2d Cir.1992).

Having said that I would rule on the merits on this issue, a review of the record convinces me that the trial court correctly concluded that the present proceedings do not violate the nonprosecution agreement. I would therefore affirm the district court.

---

5. By refusing to hear this appeal, we realize that we subject Bailey

> to the personal strain, embarrassment and expense of a trial, notwithstanding the possibility that [his] claim might eventually be held well-founded. As the Supreme Court noted in *MacDonald*, "there is value—to all but the most unusual litigant—in triumphing before trial, rather than after it ..." In all but a very

narrow class of cases, however, society has placed a greater value on the many interests served by the final judgment rule. This case simply does not fall within that narrow class of cases.

*Bird*, 709 F.2d at 392 (quoting *MacDonald*, 435 U.S. at 860 n. 7, 98 S.Ct. at 1552–53) (footnote omitted).